**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| HAROLD D. POPE, | ) | No. ED CV 04-1464-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendants. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 30, 2004, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on December 27, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 16, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 17, 1949.  [Administrative Record ("AR") at 98.] He completed high school and attended college for two years. [AR at 53, 113.] His relevant past work experience includes positions as a janitor/cleaner, dishwasher, and day laborer.  [AR at 75, 116-22.]

On October 23, 2001, plaintiff protectively filed an application for Supplemental Security Income payments, in which he alleged that he has been unable to work since December 1, 2000, due to pain, anxiety, stress, and heart problems.  [AR at 98-100, 106-15.]  After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on April 13, 2004, at which plaintiff appeared with counsel and testified on his own behalf.  A vocational expert also testified. [AR at 48-79.]  On June 24, 2004, the ALJ determined that plaintiff was not disabled because he retains the ability to perform light work activity.[1]  [AR at 14-21.]  When the Appeals Council denied review on November 10, 2004, the ALJ's decision became final. [AR at 5-8.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's

_____

[1]    Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).

2

1  decision, the Court examines the administrative record as a whole, considering adverse as well

2  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

3  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

4  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

5  53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

6

7  **IV.**

8  **THE EVALUATION OF DISABILITY**

9       Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

10  to engage in any substantial gainful activity owing to a physical or mental impairment that is

11  expected to result in death or which has lasted or is expected to last for a continuous period of

12  at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

13

14  **A.**    **THE FIVE-STEP EVALUATION PROCESS**

15       The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

16  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

17  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

18  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

19  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

20  substantial gainful activity, the second step requires the Commissioner to determine whether the

21  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

22  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

23  If the claimant has a "severe" impairment or combination of impairments, the third step requires

24  the Commissioner to determine whether the impairment or combination of impairments meets or

25  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

26  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

27  If the claimant's impairment or combination of impairments does not meet or equal an impairment

28  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1   sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

2   and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

3   past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

4   case of disability is established.  The Commissioner then bears the burden of establishing that

5   the claimant is not disabled, because he can perform other substantial gainful work available in

6   the national economy.  The determination of this issue comprises the fifth and final step in the

7   sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

8   F.2d at 1257.

9

10  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

11       In this case, at step one, the ALJ concluded that plaintiff has not engaged in any

12  substantial work activity since the alleged onset of disability.  [AR at 15, 21.]  At step two, the ALJ

13  concluded that plaintiff has the severe impairments of a personality disorder and status post injury

14  to the heart.  [Id.]  At step three, the ALJ found that plaintiff's impairments do not meet or equal

15  the requirements of any of the impairments in the Listings.  [Id.]  The ALJ further determined that

16  plaintiff retains the residual functional capacity[2] to perform light work with certain limitations.[3]  [Id.]

17  At step four, the ALJ determined that plaintiff is capable of performing his past relevant work.  [AR

18  at 20-21.]  Accordingly, the ALJ found plaintiff not disabled.  [Id.]

19

20

21

22

_____

23    [2]  Residual functional capacity ("RFC") is what a claimant can still do despite existing

24  exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

25    [3]  According to the ALJ, out of an eight hour workday plaintiff can stand and/or walk for six

26  hours and sit for six hours with normal breaks.  He can occasionally climb, balance, stoop, kneel, crouch and crawl, and is precluded from working at unprotected heights, around dangerous

27  machinery, and at temperature extremes.  As for his mental limitations, plaintiff is limited to routine, repetitive, entry-level work tasks that involve working with things rather than people. [AR

28  at 15.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends the following: (1) the RFC determination is not supported by substantial evidence; (2) the ALJ failed to properly evaluate plaintiff's credibility; and (3) the ALJ failed to properly consider the testimony of the vocational expert ("VE").  Joint Stipulation ("Joint Stip.") at 3.  For the reasons stated below, the Court respectfully disagrees with plaintiff's contentions, and affirms the ALJ's decision.

**A.    THE ALJ'S DETERMINATION OF PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

**1.    Physical RFC**

In reaching the conclusion that plaintiff is physically capable of performing light work, the ALJ gave significant weight to the opinions of two consultative examining physicians and the state agency reviewing physicians. [AR at 17.]

One of the consultative examiners, Dr. Concepcion Enriquez, conducted an internal medicine evaluation of plaintiff on December 21, 2001, which returned mostly normal results. [AR at 182-85.] Noting that plaintiff had suffered a puncture wound to his left ventricle in 1999, the doctor found no present signs or symptoms of congestive heart failure or the presence of an arrhythmia.  Additionally, although plaintiff had a long history of high blood pressure, Dr. Enriquez found it to be well controlled at 110/74.  Plaintiff also reported a two year history of abdominal pain, which Dr. Enriquez opined was likely secondary to peptic ulcer disease. [AR at 185.] Based on the results of the examination, the doctor concluded that plaintiff can perform the equivalent of medium work, i.e., lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk with normal breaks for six hours in an eight-hour workday, and sit with normal breaks for six hours in an eight-hour day. [Id.] The record shows that the non-examining state agency physicians similarly concluded that plaintiff has no severe impairment and that he is able to perform the equivalent of medium work activity. [AR at 198-206,  232-33.]

Plaintiff underwent another consultative internal medicine evaluation on September 17, 2002.  Dr. Mohan Mallam conducted the examination, which returned mostly normal results. [AR

at 228-31.] Plaintiff's blood pressure was at 130/90, and his pulse was 96. [AR at 230.] Noting that plaintiff required no assistive devices for walking, and exhibited no difficulties in physically maneuvering about the office, Dr. Mallam opined that no restrictions on plaintiff's activities were warranted. [AR at 230-31.]

In the hearing decision, the ALJ fairly summarized the above reports and went on to state that he "considered the administrative findings of fact made by the State agency medical physicians, and other consultants, as well as the consultative examiners who assessed a medium residual functional capacity, and their opinions are given significant weight..." [AR at 17.]  As the above opinions are based on objective clinical findings, they constitute substantial evidence.  See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.  1989) ("[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence...") (internal quotations and citations omitted)); see also Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (the opinions of a non-examining medical advisor can "serve as substantial evidence when they are supported by other evidence in the record and are consistent with it") (quoting Andrews, 53 F.3d at 1041).  The Court therefore concludes that the ALJ properly relied on these opinions in determining plaintiff's physical RFC.

In addition, the ALJ observed the following from the record, which further substantiates the light work determination:  (1) on January 3, 2002, plaintiff took part in an exercise stress test which returned normal results with no complaints by him of chest pain and no evidence of arrhythmias or myocardial ischemia [see AR at 16, 187]; (2) although plaintiff has a history of high blood pressure, there is no indication of end organ damage or other significant problems arising from this condition; (3) plaintiff's hypertension has been well controlled with medication; and (4) treatment records from January 2001 through April 2004 reflect mostly normal physical examination results and no indication of persistent complaints of chest pain. [AR at 16.]

Plaintiff argues, however, that the ALJ should have accepted the findings of consultative examiner Dr. Nicholas Nassar.  Joint Stip. at 4.  The record shows that on January 8, 2004, Dr. Nassar examined plaintiff, and noted mostly normal results. [AR at 270-74.]   Dr. Nassar concluded, however, that plaintiff's chest pain was "most likely related to coronary artery disease"

1    and that due to plaintiff's alleged blackouts and dizziness, he "most likely needs a pacemaker."

2    [AR at 274.] In conclusion, Dr. Nassar determined that plaintiff can perform the equivalent of

3    sedentary work, i.e., lift or carry 10 pounds occasionally and 10 pounds routinely, stand or walk

4    up to two hours in an eight-hour workday, and sit less than six hours. [AR at 274.]

5          The ALJ discredited Dr.  Nassar's opinion on the basis that it was subjective and "not

6    based on objective findings to support his opinion that these signs and symptoms were consistent

7    with coronary artery disease." [AR at 17.] The ALJ went on to state that "there is no evidence of

8    severe limitations due to coronary artery disease and no objective evidence to show the cause

9    of the claimant's blackouts or dizziness are related to such a condition.  Furthermore, there is no

10   objective evidence that the claimant would likely require a pacemaker." [Id.]

11         The rejection of a controverted physician's opinion must be based on specific and

12   legitimate reasons supported by substantial evidence from the record. See Nguyen v. Chater, 100

13   F.3d 1462, 1466 (9th Cir. 1996).  Here, the ALJ correctly observed that Dr. Nassar's conclusions

14   concerning coronary artery disease were predominantly subjective, that the record contains no

15   objective evidence showing the presence of that condition, and additionally, that there are no

16   clinical findings indicating plaintiff needs a pacemaker.  The Court finds these reasons both

17   specific and legitimate, and therefore legally sufficient to support the ALJ's rejection of Dr.

18   Nassar's opinion that plaintiff should be limited to sedentary work.

19         Plaintiff further contends that "[t]here are no medical opinions within this Administrative

20   Record consistent with [him] having the ability to perform and sustain light levels of work activity."

21   Joint Stip. at 4-5.  Plaintiff's argument ignores a pertinent aspect of the ALJ's reasoning,

22   specifically the ALJ's determination that in "[g]iving generous consideration [to plaintiff's]

23   subjective complaints of pain and fatigue in light of his medically documented heart injury

24   impairment, ... a residual functional capacity to the light level is appropriate in this case." [AR at

25   17.] Thus, while the ALJ acknowledged that the medical opinions relied upon concluded plaintiff

26   was capable of medium work, he reduced the RFC to light work in order to appropriately

27

28

1  encompass plaintiff's allegations of fatigue and pain.[4]  Moreover, defendant correctly points out

2  that a finding of medium work capability necessarily includes a finding that an individual can also

3  perform light work.  See 20 C.F.R. § 416.967(c) ("If someone can do medium work, we determine

4  that he or she can also do sedentary and light work.").  Thus, it was not improper for the ALJ to

5  make a light work activity determination by relying on the consulting and state agency physicians'

6  opinions setting forth medium work restrictions.

7      For the foregoing reasons, the Court concludes that the ALJ's decision with respect to

8  plaintiff's physical RFC is supported by substantial evidence in the record.

9      **2.   Mental RFC**

10      The ALJ also concluded in the hearing decision that plaintiff is limited to "routine, repetitive,

11  entry-level work tasks and working with things rather than people." [AR at 15.]  Plaintiff claims that

12  this determination is erroneous because the ALJ failed to properly consider treating records

13  showing that on September 18, 2003, plaintiff's Global Assessment of Functioning ("GAF") score

14  was 40,[5] and failed to evaluate two third party questionnaires. Joint Stip. at 5-6.

15      In reaching plaintiff's mental RFC, the ALJ gave significant weight to the opinion of

16  consultative psychiatrist Dr. Ernest Bagner. [AR at 18, 178-81.]  Plaintiff was evaluated by Dr.

17  Bagner on January 3, 2002, and was diagnosed with depressive disorder (not otherwise

18  specified), alcohol abuse (in remission), and rule out anti-social personality disorder.  Dr. Bagner

19  assigned plaintiff a GAF score of 67.[6] [AR at 180-81.]  As for plaintiff's functional assessment, Dr.

20  _____

21      [4]   Plaintiff also contests the ALJ's credibility determination.  As discussed in the following
    section, the Court finds the credibility assessment proper and supported by the record.  See infra.

22
23      [5]   A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the
    individual's overall level of functioning.  It is rated with respect only to psychological, social, and
    occupational  functioning, without regard to impairments in functioning due to physical or
24  environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical
    Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000).  A GAF score in the range of 31 to 40
25  indicates some impairment in reality testing or communication, or major impairment in several
    areas, such as work or school, family relations, judgment, thinking, or mood.  Id. at 34.
26

27      [6]   A GAF score in the range of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood
    and  mild insomnia) or some difficulty in social, occupational, or school functioning (e.g.,
28  occasional truancy, or theft within the household), but generally functioning pretty well, has some

1   Bagner found that plaintiff would have no limitations completing simple tasks, and would have mild

2   limitations with the following:  interacting with supervisors, peers and the public; handling normal

3   stresses at work; maintaining concentration and attention; completing complex tasks; and

4   completing a normal work-week without interruption. [AR at 181.]  As Dr. Bagner's opinion was

5   based on his own independent examination and findings, it constitutes substantial evidence in

6   support of the ALJ's decision.  See Magallanes, 881 F.2d at 751.

7         The ALJ similarly gave significant weight to the opinion of consultative psychiatrist Dr. Linda

8   Smith. [AR at 18.] According to the record, Dr. Smith's examination of plaintiff took place on

9   January 16, 2004.  [AR at 259-67.] The doctor diagnosed plaintiff with alcohol abuse (possibly

10  abstaining) and antisocial personality traits, and assigned a GAF score of 80.[7]   Dr. Smith

11  concluded that plaintiff has no limitations with respect to mental functioning, but noted that he was

12  not a credible historian, was uncooperative and resisted giving details regarding his claim, and

13  was extremely evasive, vague, and manipulative throughout the examination. [AR at 266-67.] As

14  Dr. Smith's opinion is based on independent clinical findings, it constitutes substantial evidence.

15  Thus, the ALJ's reliance on this opinion in determining plaintiff's mental limitations was proper.

16  See Magallanes, 881 F.2d at 751.

17        The ALJ additionally considered the opinions of the non-examining physicians. [AR at 19.]

18  In the mental residual functional capacity assessment completed in January 2002, it was found

19  that plaintiff would have no limitations in performing simple and routine tasks, and mild limitations

20  in working with supervisors and the public. [AR at 207-11.] On October 1, 2002, another non-

21  examining physician adopted the finding that plaintiff had no disabling mental impairment. [AR at

22  234.] In addition, the psychiatric review technique form completed on January 22, 2002, likewise

23  shows that plaintiff had only mild limitations with respect to his mental functioning. [AR at 235-48.]

24        According to the hearing decision, the ALJ also evaluated the treatment records from

25

26  _____

    meaningful interpersonal relationships."  DSM-IV at 34.

27
    [7]   A GAF score of 71 to 80 indicates no more than slight impairment in areas such as social
28  or occupational functioning.  DSM-IV at 34.

1   Barstow Counseling and Behavioral Health Center dated September 2003 through December

2   2003. [AR at 250-58.]  The ALJ correctly noted that while plaintiff complained of depression,

3   sleeplessness, decreased energy, lack of concentration, loss of appetite, and decreased interest,

4   his mental status examination was "essentially benign." [AR at 18.] Plaintiff argues, however, that

5   the fact his treating physician assigned him a GAF score of 40 should be controlling, as it

6   indicates he has significant social and work-related limitations.  According to plaintiff, the GAF

7   score of 40 amounts to evidence that is "obviously inconsistent with the ALJ's mental

8   assessment."  Joint Stip. at 5-6.  "While a GAF score may be of considerable help to the ALJ in

9   formulating the RFC, it is not essential to the RFC's accuracy."  Howard v. Commissioner of Social

10  Sec., 276 F.3d 235, 241 (6th Cir. 2002) (holding that the "ALJ's failure to reference the GAF score

11  in the RFC, standing alone, does not make the RFC inaccurate"); see also Alvarez v. Barnhart,

12  2002 WL 31466411, *8 (W.D. Tex. 2002) ("While the GAF is a test used by mental health

13  practitioners with respect to planning treatment and tracking the clinical progress of an individual

14  in global terms, the ALJ is not bound to consider its results at the exclusion of other medically

15  reliable evidence.").  Accordingly, contrary to plaintiff's contention, the GAF score of 40 -- without

16  more -- is not determinative of the issue of disability, and the ALJ was not required to exclusively

17  rely on that score when evaluating plaintiff's functional capacity.  In turn, the Court finds, based

18  on the other psychiatric evidence, that the ALJ's failure to discuss the significance of this particular

19  GAF score was not improper.

20      Nor is the Court persuaded by plaintiff's argument that the ALJ failed to properly evaluate

21  two third party questionnaires completed by plaintiff's friend, Ryan McBeal.  Lay witness testimony

22  is "qualified evidence" that the ALJ must consider.  See Sprague v. Bowen, 812 F.2d 1226, 1231-

23  32 (9th Cir. 1987); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often

24  tell whether someone is suffering or merely malingering . . . this is particularly true of witnesses

25  who view the claimant on a daily basis. . .").  An ALJ may reject lay testimony only for specific

26  reasons germane to each witness.  See Regennitter v. Commissioner of the Soc. Sec. Admin.,

27  166 F.3d 1294, 1298 (9th Cir. 1999); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996); Smith

28  v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988) (citing Sprague, 812 F.2d at 1232, for the

1  proposition that "[d]escriptions by friends and family members in a position to observe a claimant's

2  symptoms and daily activities have routinely been treated as competent evidence," and that

3  "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations

4  by non-medical sources as to how an impairment affects a claimant's ability to work.").

5      Here, the ALJ expressly considered the questionnaires at issue. [AR at 20, 135-46.]

6  Although the ALJ remarked that third party questionnaires "are not medical evidence" and "merely

7  reflect that person's opinion is sincere," it appears that the ALJ nevertheless accepted Mr.

8  McBeal's statements. Specifically, the ALJ concluded that, based on McBeal's commentary about

9  plaintiff's ability to perform light chores, visit with family and friends, and attend church at times,

10  the questionnaires "support a finding that [plaintiff] was not so severely disabled as he alleges."

11  [AR at 20.] Given the ample medical evidence in support of the ALJ's RFC determination, plaintiff

12  has failed to show how the questionnaires completed by Mr. McBeal warrant a more restrictive

13  assessment.

14      The Court concludes that the ALJ's reliance on the opinions of consultative examining

15  psychiatrists as well as the non-examining physicians, all of which consistently conclude that

16  plaintiff has no severe limitations with respect to mental functioning, was proper. Accordingly, the

17  ALJ's formulation of the mental RFC is based on a reasonable interpretation of the evidence, and

18  is amply supported by the record.

19

20  **B.    PLAINTIFF'S CREDIBILITY**

21      At the administrative hearing plaintiff testified that he suffers from pain in his chest and

22  hands, frequent blackouts, and experiences nervousness around people. [AR at 58-63, 71-72,

23  75.] He stated that he spends his time mostly at home reading and watching television, that he

24  "see[s] dead people" and hears voices in his head, and suffers from panic attacks. [AR at 63-65.]

25  He takes Tylenol for pain. [AR at 74-75.] In other documents submitted to the Social Security

26  Administration ("SSA"), plaintiff indicated that he experiences shortness of breath and high blood

27  pressure, and that he can only work for a few hours before getting tired. [AR at 129, see also AR

28  at 161-65.]

The ALJ found in the hearing decision that plaintiff "ha[d] [not] provided any information sufficiently credible to warrant the assessment of more restrictive limitations" than those set forth in the RFC.  [AR at 19.]  The ALJ based this credibility determination on numerous reasons, including the following: (1) despite plaintiff's allegations of fatigue and shortness of breath, his exercise stress test returned normal results; (2) plaintiff's medical treatment has been routine and conservative; (3) the objective evidence does not support plaintiff's reported inactive lifestyle; (4) plaintiff's ability to take care of his personal needs and take part in daily activities, including some household chores, reflects a physically active and healthy lifestyle; and (5) there is no evidence showing that plaintiff's fear and stress due to loud noises interfere with his daily activities.  [AR at 19-20.]  The ALJ went on to assess the RFC as set forth supra, and, relying on the vocational expert's testimony, concluded that plaintiff could perform his past relevant work. [AR at 20.]

Plaintiff asserts in the Joint Stipulation that the ALJ failed to properly assess his credibility. Joint Stip. at 11-14.  Because the record contains medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

The ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The following factors may be considered in weighing a plaintiff's credibility: (1) his reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the

1   symptoms of which he complains.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see

2   also 20 C.F.R. §§ 404.1529(c), 416.929(c).  "General findings are insufficient."   Reddick v.

3   Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ must state which testimony is not credible

4   and identify the evidence that undermines the plaintiff's complaints.  Id.; Benton, 331 F.3d at

5   1041.  If properly supported, the ALJ's credibility determination is entitled to "great deference."

6   Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

7        Here, the ALJ's credibility determination is owed deference because it is based upon clear

8   and convincing findings.  For example, the ALJ appropriately found that plaintiff's allegations

9   regarding fatigue and shortness of breath were contradicted by the exercise stress findings.  See

10  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot

11  discredit testimony as to pain, it is one factor which the ALJ is permitted to consider).  Similarly,

12  the ALJ found no evidence of an impairment that requires the sort of sedentary lifestyle as

13  described by plaintiff at the hearing.  Moreover, the ALJ noted that despite plaintiff's testimony that

14  he was in constant pain and tired easily, he nevertheless stated that he paced back and forth in

15  his room for hours at a time. [AR at 72.] The Court finds that it was reasonable for the ALJ to

16  determine that plaintiff was exaggerating his symptoms as the objective medical evidence, as well

17  as portions of plaintiff's own testimony, did not support the level of inactivity claimed.

18       The ALJ also determined that plaintiff's routine and conservative medical treatment

19  evidenced a higher level of functioning than alleged, and noted that plaintiff's reliance on pain

20  medication is limited to occasional use of Tylenol 3 and that his complaints of pain have been

21  sporadic and infrequent.  The Court finds this reason sufficiently convincing, as it was reasonable

22  for the ALJ to conclude that an individual with plaintiff's alleged symptoms would likely require a

23  more aggressive course of action than what is reflected in the record.  See Johnson v. Shalala,

24  60 F.3d 1428, 1434 (9th Cr. 1995) (conservative medical treatment could suggest lower level of

25  pain and functional limitation).  The ALJ also appropriately relied upon the fact that plaintiff's

26  hypertension was controlled with medication.  See Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.

27  1983) (impairments positively treated with medications were "found not to significantly limit [the

28  plaintiff's] exertional capabilities").

13

1      Another clear and convincing reason given by the ALJ was the fact that plaintiff's reported

2  daily activities reflect "a physically active and healthy lifestyle." [AR at 20.]   For example, In

3  documents submitted to the SSA, plaintiff indicated that his pain and stress did not interfere with

4  taking care of his personal needs, and that he was able to go shopping once a week with friends,

5  frequently visit family members, and perform some household chores. [148-65.]  Plaintiff also

6  reported to Dr. Bagner that he was able to do chores and cook, and take care of his personal

7  hygiene. [AR at 178-79.]  The Court finds that the ALJ's determination is sufficiently clear and

8  convincing, as plaintiff's reported activities demonstrate a level of functioning that is inconsistent

9  with an impairment of disabling severity.  See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989)

10 ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities

11 that involve many of the same physical tasks as a particular type of job, it would not be farfetched

12 for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.").

13      For the foregoing reasons, the ALJ's conclusion that plaintiff's testimony was not

14 "sufficiently credible" to require a more restrictive RFC is supported by the record and will not be

15 disturbed.[8]

16 **C.    VOCATIONAL EXPERT TESTIMONY**

17      During the hearing, the ALJ posed two hypotheticals to the vocational expert ("VE").  In the

18 first, the ALJ set forth the following restrictions: limited to light work; no unprotected heights,

19 dangerous machinery, or temperature extremes; only occasional climbing, balancing, stooping,

20 kneeling, crouching, and crawling; only routine and repetitive tasks, entry-level work, and working

21 with things rather than people. [AR at 76.] The VE responded that an individual with these

22 limitations could work numerous light positions, such as cleaner, bench assembly worker, and

23 hand packer, as well as perform plaintiff's past relevant work. [AR at 76-77.]

24

25

26      [8]   In the portion of the Joint Stipulation regarding credibility, plaintiff again raises the argument
27 that the ALJ failed to properly assess the third party questionnaires. Joint Stip. at 13. The Court
   already addressed this contention in the preceding section and found that it has no merit.  See
28 supra.

1   In the second hypothetical, the ALJ added the following restriction: "off task" at least twenty

2   percent of the time due to psychological-based symptoms of anxiety, inability to concentrate,

3   and/or physical limitations caused by a heart problem. [AR at 77.] According to the VE, an

4   individual with these limitations would be unable to work as "[t]wenty percent off task would involve

5   ... not working at a competitive full-time rate." [Id.]

6   Plaintiff argues that the ALJ failed to properly consider the VE's testimony that an individual

7   who would be "off-task" twenty percent of the time would not be employable in a full-time position.

8   Joint Stip. at 17.  The Court disagrees.

9   Because the ALJ determined at step four of the sequential analysis that plaintiff is capable

10  of performing his past relevant work as a janitor/cleaner, it was "unnecessary for the ALJ to

11  proceed to the fifth step to determine whether [plaintiff] had the residual functional capacity to

12  perform other work." Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). Vocational evidence is

13  relevant at step five of the evaluation. See id. at 255. Accordingly, while VE testimony may be

14  useful at step four, and can be relied upon by an ALJ, it is not required when plaintiff has failed

15  to show that he is unable to return to his previous job. Matthews v. Shalala, 10 F.3d 678, 681 (9th

16  Cir. 1993).  As such, any error as alleged here by plaintiff with respect to the ALJ's treatment of

17  the VE's testimony is harmless.  In any event, reliable evidence (consisting of the opinions of the

18  consulting and reviewing physicians, as well as the balance of the objective evidence) supported

19  the limitations that were presented in the first hypothetical, the VE testified that plaintiff could

20  perform his past relevant work, and the ALJ properly relied on this testimony.

21  Accordingly, the Court concludes that plaintiff's claim is without merit, and affirms the ALJ's

22  decision at step four.

23  /

24  /

25  /

26  /

27  /

28  /

## VI.

### CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED: October 3, 2006             _____/S/_____
                                           PAUL L. ABRAMS
                         UNITED STATES MAGISTRATE JUDGE